IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-CR-224 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| BOGDAN NICOLESCU, et al. | ) | |
| | ) | |
| | ) | UNITED STATES OF AMERICA'S |
| Defendant. | ) | OMNIBUS MOTION IN LIMINE |
| | ) | |

The government moves, pursuant to Federal Rules of Evidence 401, 402, and 403 to exclude certain evidence and argument that the defense may present as either: (a) irrelevant; (b) overly prejudicial (in that its probative value is outweighed by its prejudicial effect and/or tendency to confuse the jury); or (c) otherwise improper.

Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401.  Even if relevant, the Court may exclude the evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The government requests that the defendants be prohibited from introducing evidence or argument (1) that the Romanian or U.S. investigation is somehow unreliable due to vague allegations of corruption; (2) that defendants are victims of selective prosecution because they are foreign or Romanian; or (3) regarding the possible sentence in this case or how the Romanian justice system would handle a comparable case.

1.      **The Court Should Exclude any Evidence or Argument that the Investigation is Unreliable Based on Vague Allegations of Romanian or FBI Corruption**

The government is concerned that the defendants—capitalizing on the jury's likely lack of in-depth knowledge about Romania—may make vague and general allegations about the Romanian government or law enforcement being corrupt to argue that the DOJ's investigation is untrustworthy and should not be relied upon.  Similarly, the defendants may attempt to argue that the DOJ or FBI's investigation is untrustworthy based on recent politically motivated attacks against the DOJ and FBI, having nothing to do with this case.  The government moves to exclude this type of evidence or argument.

First, there is no evidence to suggest that the "Romanian Government," "Romanian Prosecutors," or "Romanian Investigations" are corrupt at all, let alone that the particular prosecutors or investigators involved in this case are corrupt, let alone that any imagined "corruption" had any impact whatsoever on this case.  The same is true for the DOJ and FBI.  Defense has not moved to suppress any evidence on this basis, nor brought any motions in this regard.

Second, Romanian law enforcement did not investigate nor prosecute defendants, nor were they involved in the Department of Justice's decision to do so.  Instead, U.S. investigators sent formal Mutual Legal Assistance Treaty Requests ("MLATs") through the U.S. State Department to the Romanian Ministry of Justice ("MOJ") requesting that Romanian law enforcement provide it with certain records and conduct monitoring.  While the defense is certainly permitted to object to the authenticity or admissibility of any records and recordings, they cannot do so based on vague and unsupported allegation that U.S. or Romanian law enforcement is corrupt.

Third, the defendants have noticed no expert on the Romanian government or Romanian law enforcement.  Thus, defendants would be left to make vague allegations of corruption through questions lacking foundation, innuendo, and perhaps inadmissible news articles about Romanian politics.

Finally, "[u]nder our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998).  As a result, "evidence questioning the adequacy of various aspects of the government's investigation itself – as opposed to the adequacy of the evidence gathered as a *result* of that investigation – is either irrelevant or of very little probative value, as it improperly shifts the jury's focus from the accusations against the defendant to the accusations against the police." *United States v. Carnuchael*, 373 F. Supp. 2d 1293, 1297 (M.D. Ala. 2005); *see also United States v. Washington,* 455 F.3d 736 (6th Cir. 2006); *United States v. Thomas*, 49 F.3d 253 (6th Cir. 1995); *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993); *United States v. Estell*, 641 F. App'x 552, 556 (7th Cir. 2016) ("trial judges have discretion to limit argument on tangential issues that could confuse the jury, and that includes a defendant's complaints about the adequacy of the government's investigation."); *United States v. Robbins*, 197 F.3d 829 (7th Cir. 1999) (affirming district court's decision not "to allow this trial to become a trial of the investigation" and to ensure that "the jury make its decision based on evidence actually presented rather than . . . speculation about the possible existence of other evidence that might have been developed if the investigation had been carried out in some other way.").

Accordingly, the government respectfully requests that the Court exclude any evidence, testimony, or argument at trial that the government's investigation should not be relied upon because the DOJ, FBI, or Romanian law enforcement is corrupt.

**2.     The Court Should Exclude any Evidence or Argument that the Defendants are Being Singled Out or Prosecuted Because They are Foreign or Romanian**

Foreign defendants commonly argue explicitly or implicitly that they are being singled out for prosecution because of their ethnicity or national original, or that the government has a bias against individuals of their nationality.  In this case, the defendants may argue or suggest that they are simply being prosecuted or "framed" because they are technically-minded Romanians and "all Romanians must be cybercriminals."  This is improper.  "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong,* 517 U.S. 456, 463 (1996).  In the Sixth Circuit, such a claim is presented to the Court, not the jury.  *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006).

While the defense may cross-examine an adverse witness for bias, it must have a good faith basis.  *See United States v. Beck,* 625 F.3d 410, 418–19 (7th Cir. 2010); *see also United States v. Martin,* 618 F.3d 705, 729–30 (7th Cir. 2010).  Courts should "not allow defendants to circumvent the aforementioned limitations on when and before whom claims of selective prosecution or government misconduct may be brought by asking questions which they label as cross examination to show bias." *United States v. Infelise*, No. 90 CR 87, 1991 WL 251654, at *1 (N.D. Ill. Nov. 14, 1991).

Accordingly, the government respectfully requests that the Court exclude any evidence, testimony, or argument at trial that the government is engaged in selective prosecution or that the government targeted the defendants because they are foreign or affiliated with Romania.

4

**3.    The Court Should Exclude any Comment Regarding the Possible Sentence in this Case or how the Romanian Justice System Would Handle a Comparable Case**

Finally, the government seeks to exclude any evidence or argument by the defendants concerning penalties, punishments, or fines they may be subjected to in this prosecution or in a hypothetical Romanian prosecution for similar conduct.  It is well established that penalties and prospective periods of incarceration are not proper topics for a jury.  *United States v. Calhoun*, 49 F.3d 231, 236 n.6 (6th Cir. 1995) (defendant does not have the right to inform the jury of possible punishment).  "Indeed, the only possible purpose that would be served by informing jurors of the . . . sentence would be to invite jury nullification of the law."  *United States v. Johnson*, 62 F.3d 849, 850-51 (6th Cir. 1995) ("When a jury has no sentencing role, providing sentencing information 'invites [jurors] to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion").  As a result, this Court has held that defense may not even ask a cooperating witness about how much time in prison he or she may be avoiding by cooperating because it would "risk putting before the jury inappropriate information regarding a defendant's potential sentence in this case." *United States v. Dimora*, 843 F. Supp. 2d 799, 844 (N.D. Ohio 2012).[1]

Accordingly, the government respectfully requests that the Court exclude any evidence, testimony, or argument at trial regarding the possible sentence in this case or how the Romanian justice system would handle a comparable case.  For the same reasons, the Court should also

---

[1] Evidence of the likely punishment from a hypothetical Romanian prosecution is complete speculation, and therefore even less relevant and more prejudicial.  The defendants were never charged in Romania, there was no underlying Romanian case upon which charges could be made, and there is no way of assuming the body of evidence that a Romanian court would use to reach a verdict or fashion a sentence.  Further, neither party has noticed any expert in Romanian law, so there is no witness who could fairly opine on what sentence defendants would likely face in Romania.  Finally, if defendants wanted to be tried and sentenced in Romania, they should have victimized Romanians instead of thousands of U.S. citizens.

prohibit defense from asking any cooperating witness about how much time in prison they may be avoiding by cooperating.

## CONCLUSION

The government respectfully requests that the Court grant its motions in limine to exclude the improper evidence and arguments discussed above.

                           Respectfully submitted,

                           JUSTIN E. HERDMAN
                           United States Attorney

By:   /s/ Duncan T. Brown
        Duncan T. Brown (NY: 3982931)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3933
        (216) 522-7499 (facsimile)
        Duncan.Brown@usdoj.gov

        Brian M. McDonough (OH: 0072954)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3965
        (216) 522-2403 (facsimile)
        Brian.McDonough@usdoj.gov

        Brian L. Levine (DC: 480216)
        Senior Counsel
        United States Department of Justice
        1301 New York Avenue, Suite 600
        Washington, DC 20005
        (202) 616-5227
        (202) 514-6113 (facsimile)
        Brian.Levine@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2018, a copy of the foregoing Motion in Limine was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Duncan T. Brown
    Duncan T. Brown
    Assistant United States Attorney