IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-CR-224 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| BOGDAN NICOLESCU, et al. | ) | |
| | ) | |
| | ) | UNITED STATES OF AMERICA'S |
| Defendant. | ) | TRIAL BRIEF |
| | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, Duncan T. Brown and Brian M. McDonough, Assistant United States Attorneys, and Brian L. Levine, Senior Counsel for the U.S. Department of Justice, and hereby submits this Trial Brief pursuant to the Court's pretrial order.

**I.      Jury Instructions & Special Verdict Form**

The United States provided its proposed jury instructions and special verdict form in a separate filing, filed on November 5, 2018.  (Dkt. 94). The government provided these instructions to defendants on October 29, 2018 and is currently awaiting defendants' response.

**II.     Outstanding Discovery Claims**

As previously briefed before this Court (*see, e.g.,* Dkt. 74 at 3-4, 89 at 2-4) the discovery process has consistently included production to defense counsel in a manner that combined physical production along with access to agents to describe, explain, and guide counsel through the materials.  Since approximately the granting of the final continuance, the government's production to defense counsel has been what is properly described as trial exhibits, summaries of exhibits, and translations of materials previously disclosed to defense counsel, all of which

are based upon documents previously disclosed to defense. The government will continue to make trial exhibits and underlying sources available for review to counsel up until the final Wednesday before trial.[1]

### III. Stipulations

On October 29, 2018, the United States provided proposed stipulations from Defendants as to (a) the accuracy of certain certified Romanian translations; (b) the admissibility of certified trademark registrations from the USPTO; (c) the admissibility of a certified VISA application for defendant Tiberiu Danet; (d) the admission of Federal Rule of Evidence 902(11) and 902(13) certifications from Afraid.org and Site5; and (e) the authenticity of certain devices seized from each defendant. *See* **Exhibit A**. The government is currently awaiting defendants' response.

The United States proposes that where the parties have been unable to agree on the translation of an exhibit, the non-introducing party will have the opportunity to present evidence of an alternative translation during the non-introducing party's case.[2]

### IV. Trial Length

The United States estimates that its portion of the trial will be approximately two weeks (i.e., ten court days).

### V. *Voir Dire* Questions

---

[1] The government offers this cut-off date only because the Thursday before trial is Thanksgiving and it respectfully requests time to observe the holiday.

[2] The United States believes that all witnesses in the case, including defendants, are sufficiently conversant in English that they will not need to testify through a translator. Nonetheless, the United States may have a certified Romanian translator available during the testimony of Romanian witnesses. That way, if the witness becomes uncomfortable testifying in English, or needs the assistance of the translator to understand or answer a question, there will be someone available to assist.

The United States proposes the following *voir dire* questions, in addition to the standard questions inquired into by the Court:

1. How would you describe your comfort level with technology: (a) uncomfortable; (b) not that comfortable; (c) fairly comfortable; or (d) very comfortable?

2. Do you believe you would feel uncomfortable with listening to, considering, and discussing with your fellow jurors, technical testimony regarding computers, digital forensics, or malware? If so, please explain.

3. Does anyone have any feelings or philosophical beliefs about the internet or hacking that would prevent you from deciding this case based solely on the law and evidence?

4. This case is being prosecuted using a legal principle known as accomplice liability. At the most basic level, the law holds two people responsible who committed a crime together where they each had the intent to commit the crime and each did something to aid in the commission of the crime. Do you think that you will have a problem applying that rule of law in this case?

5. Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is indirect evidence that is proof of one or more facts from which you can find another fact. Either direct or circumstantial evidence can be the basis of a criminal conviction if the prosecution meets their burden of proof. Will you be able to rely on circumstantial evidence and base your conviction upon it if the prosecution meets their burden of proof?

6. Does anyone have an opinion about the Romanian National Police, the Romanian government, or other Romanian authorities?

7. Does anyone have strong feelings about FBI or U.S. law enforcement, one way or the other, so that one side is going to start with a little finger on the scale?

8. Is anyone uncomfortable with the idea that the FBI can apply to the court for a search warrant to obtain and review the computer or the emails of someone suspected of committing a crime?

9. You will hear the testimony of witnesses cooperating with the government pursuant to a plea agreement, introduced as evidence by the government. Do you have any strong feelings, one way or the other, in connection with the use of witnesses who are cooperating in exchange for a possible reduction of their sentence, which may prevent you from rendering a fair and impartial verdict in this case?

10. You will hear testimony from witnesses who will admit that they engaged in criminal conduct. Some of these witnesses may have been convicted of crimes. You will be

      instructed to examine their testimony with greater caution. Would you have any difficulty accepting the testimony by these individuals under any circumstances?

11. If a defendant is found guilty, does anyone not trust the Judge to issue a sentence that is both lawful and appropriately tailored for the particular defendant?

12. Do you, or a family member, operate an Internet-based ecommerce or retail business?  If yes, does the fact that you routinely engage in e-commerce affect your ability to be fair and impartial where there will be allegations of online fraud and fraudulent commercial activity?

13. Have you or a family member ever engaged in e-commerce or online auctions as a customer?  If yes, does the fact that you have purchased items in e-commerce affect your ability to be fair and impartial where there will be allegations of online fraud and fraudulent commercial activity?

14. Have you or a family member been a victim of online auction fraud or fraudulent e-commerce schemes?  If yes, was there anything about that experience that would affect your ability to be fair and impartial where there will be allegations of online fraud and fraudulent commercial activity?

15. Does any juror believe that victims of online fraud schemes are victims of their own behavior?  Put another way, does anybody believe that if a person falls victim to a scheme that "too good to be true" they are victims of their own actions?

## VI.    <u>Notices to Defense</u>

The United States hereby provides the defense with notice that it plans to introduce summary and demonstrative exhibits pursuant Federal Rules of Evidence 1006 and/or 611(a). *See* **Exhibit B**.   These exhibits, and their underlying source material, have already been produced to defense, and all continue to be available for the defense to review at the FBI or U.S. Attorney's Office.

Two points should be noted about these exhibits.  First, most of the exhibits listed in Exhibit B are more accurately described as "excerpts" from larger documents, rather than summaries, and thus, the government will seek to admit these documents as ordinary evidence. They are simply noticed here in an abundance of caution.

Second, if summaries or demonstratives at all, most of these exhibits are more accurately categorized as Rule 1006 summaries (rather than demonstratives), and the government will seek to admit them as such.  If, however, the Court declines to admit such exhibits as ordinary evidence or Rule 1006 summaries, the government will seek to present these exhibits to the jury as demonstratives pursuant to Federal Rules of Evidence 611(a).

The United States also provides notice that it may introduce at trial the following multimedia exhibits: (1) two screen capture videos showing government witness Liam O'Murchu text chatting with a Bayrob Member about the purchase of a car via Bayrob's "eBay live chat"; (2) a screen capture video showing Bayrob malware running on a computer with Wireshark software running in the background to show the malware's impact on the computer; (3) an audio recording of defendant Bogdan Nicolescu's telephone call regarding Jabber communications.

Finally, it should be noted that on March 23, 2018, the United States provided notice to defense of its intent to use co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).  (Dkt. 58.)

## VII.   Evidentiary Issues

### 1.   Authentication

The United States addressed the legal and factual issues related to authentication that it anticipates arising in its July 6, 2018 Opposition to Miclaus' Motion In Limine Re: Testimonial Hearsay Statements (Dkt. 74 at 15-29), but it briefly summarizes the significant issues here.

#### A.   Provider Records

On May 31, 2018, the Court already ruled that, with minor exception, records provided by America Online, 1&1 Media, Google, Yahoo, Facebook, CentriLogic (Dacentec), and Dreamhost are authentic based on Rule 902 certifications provided by each provider. (Dkt. 70.) The Court noted that "[b]ecause defendant does not dispute authenticity, the Court accepts the certifications as evidence of authenticity and a live witness need not be produced." (*Id.* at 2.) Based on the Court's ruling, the United States will not plan to call witnesses from these providers but instead will simply move in the relevant certifications. Since the Court's May 31, 2018 Ruling, the United States has also obtained similar certifications from **Afraid.org** (Dkt. 74-1) and **Site5** (**Exhibit C** hereto). The United States also intends to introduce these certifications in lieu of witness testimony.

B.    <u>Evidence from Defendants' Digital Devices Seized In Romania</u>

The United States will offer evidence from certain digital devices seized from defendants by the Romanian National Police ("RNP") as part of their arrests in Romania on September 28, 2018. Because the evidence supporting the authenticity of each particular device will come in from multiple witnesses, the United States will either: (a) seek the admission of each device (or evidence item from a device) subject to the Court's later authenticity determination; or (b) have multiple witnesses identify and discuss a particular digital device before the United States requests that it be moved into evidence. Specifically, to authenticate these items, the United States plans to introduce:

- Testimony from one or more former members of the Romanian National Police (RNP) who were personally involved in some (but not all) of the September 28, 2016 searches regarding: (a) their role in the particular searches; (b) the procedures by which the RNP conducts and conducted all of the searches; and (c) the reliability of the search and seizure methodology;

- Search and inventory forms prepared by the RNP and signed by each of the defendants (thus "adopted admissions" pursuant to FRE 801(d)(2)(B)) that describe the circumstances of each search and list the specific items seized from each location;

- Testimony from several members of the FBI who were physically present during some (but not all) of the searches regarding the same topics;

- Testimony from an FBI agent regarding files and artifacts (e.g., pictures, emails, contacts, account information, word documents) found on each of these devices that tend to show who controlled the device;

- Testimony from an FBI computer scientist that the metadata associated with the seized devices suggests that neither the devices nor the files thereon were altered after the date of defendants' arrests.

- Testimony from one or more cooperating witnesses, whose testimony is consistent with and corroborative of the authenticity of the digital devices.

C. <u>Audio Files</u>

The United States may offer a 30 second recorded phone conversation involving defendant Bogdan Nicolescu. The United States will authenticate the audio file through the testimony of one or more witnesses familiar with Nicolescu's voice and who has some understanding of the content and context of the call.

D. <u>Interception of Defendants' Home / Cellular Internet Traffic</u>

The United States may offer one or more electronic file, reflecting intercepted internet traffic from defendants' residences (so called, "packet capture," or "PCAP files"). The United States will authenticate these files based on (a) RNP testimony as to the reliable methods the RNP uses generally to obtain such information; (b) FBI testimony regarding the distinctive characteristics of the PCAP files showing that they are PCAP files from the relevant date and time; that they correlate with data produced and authenticated by U.S. providers; and that they relate to each defendant (e.g., data showing a defendant logging onto his personal email account and using the password associated with that account).

E.     Screenshots of Public Websites

The United States will seek to authenticate several public webpages based on (a) testimony from a witness that the screenshot represents a fair and accurate screen capture of the webpage as of the time the witness visited the website; and (b) distinctive characteristics of the webpage linking the page either to one of the defendants and/or to the Bayrob Group's criminal scheme (thus, establishing its relevance).

**2.     Confrontation Clause**

The United States addressed the legal and factual issues related to the Confrontation Clause that it anticipates arising in its July 6, 2018 Opposition to Miclaus' Motion In Limine Re: Testimonial Hearsay Statements. (Dkt. 74 at 5-7.) In short, the vast majority of "statements" to be offered by the United States will either constitute non-hearsay, statements of a party opponent, adopted admissions, or statements in furtherance of the conspiracy. The Confrontation Clause is not implicated this type of evidence. *Id.*

While some of the records the United States may seek to introduce are business or public records, "[b]usiness and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

**3.     Hearsay**

The United States addressed the hearsay issues that it anticipates arising in its July 6, 2018 Opposition to Miclaus' Motion In Limine Re: Testimonial Hearsay Statements (Dkt. 74 at 7-15), but briefly summarizes the most significant issues here.

Most of the "statements" the government will offer are not hearsay because they fit into one or more of the following categories: (a) false or fraudulent statements (not offered for their truth); (b) commands, instructions, or questions (incapable of being true or false); (c) evidence offered to establish identity (as opposed to truth); (d) evidence offered to establish authenticity (as opposed to truth); (e) statements of independent legal significance; and (f) statements to provide context for other admissible statements. Some of the "statements" were also generated by a computer or machine, and therefore not "statements" at all for purposes of the hearsay rule. Even if offered for the truth, the majority of the statements at issue would also be statements of a party opponent, adopted admissions, and/or statements in furtherance of the conspiracy.

The United States may also offer four distinct categories of business and public records: (1) certified trademark registrations from the USPTO; (2) Tiberiu Danet's certified Visa application; (3) provider certifications; and (4) law enforcement inventories and seizure forms. With respect to this last category, the seizure forms have been signed by defendants and are thus adopted admissions. The government will either offer the remaining documents through testimony of a live witness involved in preparation of the form; or only offer the document to the Court to assist in ruling on *prima facie* authenticity under FRE 104.

## VIII. Exhibit Redaction

Because the Bayrob Group is charged, in part, with stealing thousands or millions of pieces of personal identifying information ("PII") such as names, addresses, phone numbers, social security numbers, phone numbers, email addresses, login names and passwords, and credit card information, the United States anticipates that scores (if not hundreds) of its exhibits will contain a significant amount of PII. Many exhibits, in fact, contain nothing but thousands or millions of records of stolen PII. It is not practical to redact out all of this PII before trial

because many of the exhibits—already difficult to interpret before redaction—would become meaningless, devoid of content, or at least very difficult to understand once the PII is redacted. Thus, the government proposes the following:  (1) exhibits will be introduced in court in an unredacted form, though care will be given to ensure that the public's exposure to PII is minimized (e.g., by showing PII in a small font, turning display monitors, or using Trial Director to redact some PII on the fly); (2) during the trial and once the trial concludes, all exhibits will temporarily be placed under seal; (3) after trial, the government will redact all relevant PII and then the redacted exhibits will replace the original exhibits and be unsealed by the Court.

## IX. <u>Sequestration</u>

Pursuant to Federal Rule of Criminal Procedure 615, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."  FRCP 615. The rule, however, "does not authorize excluding . . . (1) a party who is a natural person, or (2) *an officer or employee of a party which is not a natural person designated as its representative* by its attorney, or (3) *a person whose presence is shown by a party to be essential to the presentation of the party's cause*."  *Id.* (emphasis added).  Pursuant to Rule 615(2), the prosecution plans to designate FBI Supervisory Special Agent Ryan MacFarlane as its representative at trial.  *See United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) ("Rule 615(2) allows the government to have any law enforcement officer it wants at its counsel table.")

In addition, the prosecution requests that two other individuals be permitted to remain in the Courtroom pursuant to the "essential" person exception.  FRCP 615(3).  The "essential" person exception "contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation." *Phibbs*, 999 F.2d at 1073 (citing Fed. R. Evid. 615, Advisory Committee Notes).  "The decision to permit a

witness to remain in the courtroom is within the sound discretion of the trial court." *United States v. Mohney,* 949 F.2d 1397, 1404 (6th Cir. 1991).

      1.      <u>FBI Special Agent Stacy Lough</u>

To say that this is a complex case is an understatement. In a 54-page, 21-count indictment, the government has alleged a conspiracy that took place over more than nine years, and impacted more than 60,000 victims. The government has produced "well over 8 terabytes" as part of discovery (Dkt. 73 at 2 n.2), marked over 3,000 exhibits (many of which are in Romanian), and noticed approximately 40 witnesses.

SA Lough was the only FBI agent involved in the investigation since its inception. Her testimony is not anticipated to overlap with SSA MacFarlane (whose testimony is anticipated to be primarily of a technical nature). Among other things, due to the large volume of exhibits, digital devices, victims, and other witnesses, it will take more than one agent to assist in the organization, presentation, and logistics of exhibits and witnesses at trial. In addition, because SA Lough was involved in the investigation for nine years and from its inception, her advice on trial strategy may be crucial.

This Court has permitted a second agent to be excepted from sequestration under similar circumstances. *See, e.g., United States v. Farmer*, No. 1:14CR362, 2015 WL 4661370, at *2 (N.D. Ohio Aug. 5, 2015) (excepting second agent from sequestration over defendant's objection where there was an "extensive eight year investigation . . . multiple terabytes of discovery, and anticipated voluminous documentary exhibits" and where testimony of these witnesses was "not likely to overlap."); *United States v. Dimora*, 843 F. Supp. 2d 799, 819 (N.D. Ohio 2012) (permitting two agents to remain in the courtroom based, in part, on "the quantity and complexity of the anticipated exhibits," where "each defendant has been provided with two

11

terabytes of electronic information."); *United States v. Cooper,* 283 F.Supp.2d 1215, 1226 (D. Kan. 2003) (permitting two agents to remain in the courtroom during "document-intensive and complex" trial involving "numerous witnesses and exhibits," where the second agent was needed to manage evidence, assist with electronic presentation, advise on trial strategy, and his testimony was not likely to overlap with other agent's testimony).

### 2. Anticipated Rebuttal Witness

The government may also ask a rebuttal expert witness in digital forensics and cybersecurity to attend portions of the trial so that he or she is in a position to hear and respond to arguments made by the defense through cross examination or direct testimony.  The Sixth Circuit general favors permitting such experts to be present during trial.  *See Morvant v. Construction Aggregates Corp.,* 570 F.2d 626, 630 (6th Cir. 1978).  In *Morvant,* the Sixth Circuit recognized that "the presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves before the jury."  *Id.* at 629; *see also United States v. Reynolds*, 534 F. App'x 347, 365 (6th Cir. 2013) (district court properly exempted expert witness from sequestration order because he "did not participate personally in the investigation, was to base his opinion on the testimony given at trial."); Dimora, 843 F. Supp. 2d at 820–21 (excluding government expert from sequestration noting that "if [the expert] were sequestered, the government would be required to repeat previous testimony in the form of lengthy hypothetical questions.")

Finally, particularly given that some witnesses are traveling great lengths to testify at trial, the government requests that all witnesses be permitted to remain in the courtroom after they have testified.

## X.     Proffer Issues

One or more of the defendants in this case may have proffered to the government but not pled guilty.  Defense should be aware that the Sixth Circuit has held that a defendant opens the door to introducing a defendant's proffer statement, not only when a defendant takes the stand and testifies inconsistently with his proffer, but when defense counsel examines a witness and asks questions aimed at eliciting testimony from the witness that is "inconsistent" with the defendant's proffer.  *See United States v. Shannon*, 803 F.3d 778, 786 (6th Cir. 2015) (affirming district court's decision to admit defendant's proffer statement where defense counsel's "questioning was aimed at eliciting testimony from [a government witness] that was inconsistent with [defendant's] proffer.")  In addition, if a defense counsel argues inconsistently with his client's proffer in opening or closing, the government will seek to introduce the proffer statement (reopening the case, if necessary).  *See, e.g., Goldenberg v. United States*, No. 09-CV-4005 NGG, 2012 WL 1599869, at *2 (E.D.N.Y. May 7, 2012) (permitting prosecution to reopen its case to introduce defendant's proffer after his attorney contradicted statements in his client's proffer in closing argument).

## XI.    Absence of Co-Defendants From Trial

An argument that other individuals should be prosecuted but have not been charged is contrary to law, is highly prejudicial and should be precluded under Federal Rules of Evidence 401 and 403.  Even assuming arguendo that other individuals have criminal liability, there is no

13

requirement that the Government charge every conspirator at the same time, in the same charging document.

## XII. Counsel Request

The government anticipates calling one witness whose testimony will likely include statements of his knowledge of criminal conduct by the defendants at trial.  This testimony will likely be based on the witness' first-hand knowledge of the criminal activity.  The witness is currently not represented by counsel and the government requests that this Court appoint counsel for the witness prior to the witness taking the stand in order to protect the witness' rights against self-incrimination and legal interests.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   /s/ Duncan T. Brown
       Duncan T. Brown (NY: 3982931)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3933
       (216) 522-7499 (facsimile)
       Duncan.Brown@usdoj.gov

       Brian M. McDonough (OH: 0072954)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3965
       (216) 522-2403 (facsimile)
       Brian.McDonough@usdoj.gov

                Brian L. Levine (DC: 480216)
                Senior Counsel
                United States Department of Justice
                1301 New York Avenue, Suite 600
                Washington, DC 20005
                (202) 616-5227
                (202) 514-6113 (facsimile)
                Brian.Levine@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2018, a copy of the foregoing Trial Brief was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Duncan T. Brown
Duncan T. Brown
Assistant United States Attorney
